UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| R. PEACHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04773-JRS-DLP |
| | ) | |
| PAUL PLANT, III, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Motion for Summary Judgment as to Defendants Prater and Napper, Granting Summary Judgment for All Other Defendants**

Plaintiff Robert Peacher brought this civil rights action alleging that the defendants retaliated against him after he filed an internal complaint against a staff member at Pendleton Correctional Facility. The defendants have moved for summary judgment.

As discussed below, summary judgment is granted to defendants Officer Paul Plant III, Investigator Aaron Long, Investigator William Peterson, Officer Dennis Davis, Officer Brandon Richey, case worker Derek Christian, and Officer Christine Cooke. Summary judgment is denied as to defendants Sergeant Brandon Prater and Officer Sarah Napper.

## I. Summary Judgment Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

## II.     Undisputed Facts

Mr. Peacher's response to the defendants' motion for summary judgment contains a section titled "Statement of Disputed Material Facts," but nearly all of the assertions included there are unsupported by record citations. Dkt. 194 at 4−7. The Court will not dig through the record to determine which of Mr. Peacher's assertions are supported by evidence and which are not. *See* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Instead, the Court considers only those assertions that are properly supported by citations to a specific portion of the record. *See* S.D. Ind. L.R. 56-1(e).

### A.     Mr. Peacher's Confrontation with Officer Plant

In December 2017, Mr. Peacher told Officer Plant, whose full name is "Paul Plant III," to start using the nickname "PP3" at work. Dkt. 141-1. Officer Plant didn't like that Mr. Peacher had learned his full name. He "just explode[d]" and accused Mr. Peacher of investigating him. Peacher Interview at 9:05:25−9:05:34.[1] Officer Plant then threatened to investigate Mr. Peacher and his family, and he instructed Mr. Peacher to "come over here and look at my dick." *Id.* at 9:05:34−9:06:24; dkt. 141-1. Two days later, Mr. Peacher submitted a Prison Rape Elimination Act ("PREA") complaint. Dkt. 141-1. A case worker spoke with him about the complaint, but there was no other follow up. Peacher Interview at 9:10:20−9:10:54.

### B.     The "Hit" Note

In January 2018, Officer Plant received a note from another inmate reporting that Mr. Peacher and several Gangster Disciples had plotted a takeover of a prison cellhouse and an attack on Officer Plant. Dkt. 195 at 86 (incident report); *id.* at 131 (investigation report). Officer Plant received the note on January 11. Dkt. 195 at 86; *id.* at 131. He showed it to a sergeant and put it in an internal investigations box, where it was retrieved four or five days later. *Compare* dkt. 195 at 86 (note retrieved on January 15), *with id.* at 131 (note retrieved on January 16). Investigator Long and another investigator interviewed Mr. Peacher about the threat and the December incident.

Mr. Peacher denied that he put a "hit" on Officer Plant—or had even heard about one—but he acknowledged, "It wouldn't surprise me just because of all the conflict he has with prisoners in there." Peacher Interview at 9:18:55−9:20:07. Mr. Peacher asserts that Officer Plant conspired with another prisoner to create a false note. Dkt. 194 at 5.

---

[1] January 16, 2018, Internal Investigation interview of Robert Peacher. *See* dkt. 202.

### C. Alleged Retaliatory Acts

A few days after Officer Plant reported the note, Investigator Long directed the prison's "E Squad" to search Mr. Peacher's cell. Dkt. 141-3. Officer Davis, the E Squad commander, told Mr. Peacher they were searching his cell for Officer Plant's personal information. Dkt. 141-2 at 17:18−18:3 (Peacher Deposition) ("Defendant Dennis Davis said [he was conducting the search] because I allegedly was supposed to have Mr. Plant's information. . . . They were looking for it."). Officer Richey was also part of the E Squad at one point, but Mr. Peacher is not sure whether he was part of this search. Officer Richey did participate in another search of Mr. Peacher's cell a year later.

Ms. Napper served as a Disciplinary Hearing Board member for one of Mr. Peacher's conduct charges in 2018. She screened the charge and found him guilty. Shortly after his release from segregation for that charge, Mr. Peacher asked Ms. Napper why she "ha[d] an issue" with him. Dkt. 141-2 at 57. She told him, "I just don't like you because you file things against staff." *Id.*

In August 2018, Sergeant Prater wrote a conduct report against Mr. Peacher. That report was later dismissed. Sergeant Prater told Mr. Peacher the reports would keep happening as long as Mr. Peacher wanted to file paperwork against staff. *Id.* at 43. Sergeant Prater also delivered Mr. Peacher's food and sometimes refused to let Mr. Peacher pick his food tray, despite a medical order allowing him to do so. *Id.* at 43−45. Mr. Peacher refused to eat on those days. *Id.* Sergeant Prater told Mr. Peacher that as long as he filed "stuff" against staff, he would not get anything. *Id.*

Investigator Peterson also wrote a conduct report against Mr. Peacher. Mr. Peacher says the report was unfounded.

4

Mr. Christian was a Disciplinary Hearing Board member for one of Mr. Peacher's conduct reports. Mr. Peacher says Mr. Christian showed racial bias against Mr. Peacher's witness and discredited the witness's testimony. *Id.* at 59−60.

Officer Cooke is the Disciplinary Hearing Board chairperson. She found Mr. Peacher guilty of multiple disciplinary reports.

### D. Alleged Conspiracy

In his statement of disputed material facts, Mr. Peacher asserts a broad months-long conspiracy among the defendants, other prison staff, and at least one inmate, all to retaliate against him for filing the PREA complaint against Officer Plant. *See*, *e.g.*, dkt. 194 at 5 ("Defendant Plant conspired with a prisoner . . . and wrote a fake note claiming the plaintiff was part of a group of prisoners who put a hit on Plant."); *id.* ("[A]fter talking with Defendant Plant, Defendants Long and Peterson began conspiring with Defendant Plant and . . . ordered Defendant Davis . . . and his E-Squad team to shake the plaintiff's cell down for information regarding Defendant Plant."); *id.* at 5−6 ("Long and Peterson . . . proceeded to write [three] false conduct violation reports against the plaintiff and then coordinated with the Disciplinary Hearing Board Staff, headed by Defendant Cooke, to find the plaintiff guilty."); *id.* at 7 ("As part of the cooperation and coordination to retaliate, Defendant Cooke . . . even informed the plaintiff he would always be found guilty."). He takes the same tack in his reply. *See*, *e.g.*, dkt. 225 at 8 ("These retaliatory acts continue multiple times for over a year with the cycle of defendants repeating themselves with the inclusion of some of the defendants' subordinates, Defendants Prater, Richey, Napper and Christian, and none of this could have been completed without the cooperation and coordination to retaliate against the plaintiff by all the defendants who are connected to each other.").

But he cites no admissible evidence to support any of these assertions. He does include conspiracy accusations in his declaration. *See*, *e.g.*, dkt. 195 at 133 ("Long and Peterson . . . [wrote three] false conduct violations reports [against] me and then coordinated with the Disciplinary Hearing Board Staff, headed by Defendant Cooke, Napper and Christian to find me guilty of the false conduct violations."). But these are inadmissible conclusions based on speculation and inference, not facts based on personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence."). And, again, the Court will not search the record for evidence of these or any other improperly supported assertions of fact. *See* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(e), (h).

### III.    Discussion

To prevail on his First Amendment retaliation claims, Mr. Peacher must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity engaged in was at least a motivating factor for the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (cleaned up). The "motivating factor" requirement "amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "Suspicious timing alone will rarely be sufficient to create a triable issue" on the motivating factor element, especially where an alternative motive exists. *Id.*

For summary judgment purposes, the defendants do not dispute that Mr. Peacher engaged in protected First Amendment activity. Only Sergeant Prater disputes that he caused a deprivation that would likely deter First Amendment activity. The remaining defendants all rest their

6

arguments on the third prong: motivation. The Court will address each defendant's summary judgment arguments individually or in small groups based on similar circumstances.

### A. Sergeant Prater

Mr. Peacher testified in his deposition that Sergeant Prater filed a false disciplinary report against him and told him that the reports would "keep happening as long as [Mr. Peacher] want[ed] to file paperwork against staff." Dkt. 141-2 at 43−45. Sergeant Prater argues that he did not cause a deprivation that would deter protected First Amendment activity. Dkt. 140 at 7; *see also Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action."). But a reasonable jury could find that Sergeant Prater threatened to issue additional false disciplinary charges and deny Mr. Peacher meals if he continued to engage in protected First Amendment activity. And a reasonable jury could find that these threats would be enough to deter future First Amendment activity. Sergeant Prater is therefore not entitled to summary judgment.

### B. Officer Napper

Officer Napper found Mr. Peacher guilty on a disciplinary charge in January 2018, less than two months after Mr. Peacher filed a PREA complaint against Officer Plant. Mr. Peacher reports that the next time they saw each other, Officer Napper told him, "I just don't like you because you file things against staff." Dkt. 141-2 at 57. A reasonable jury could find, based on this statement and its proximity to Mr. Peacher's PREA complaint and disciplinary charge, that Officer Napper found Mr. Peacher guilty of the disciplinary charge at least in part based on his protected First Amended activity. Officer Napper is therefore not entitled to summary judgment.

### C. Investigator Long, Investigator Peterson, Officer Davis, and Officer Richey

Investigator Long and Investigator Peterson directed Officer Davis and the E Squad to search Mr. Peacher's cell. Officer Richey was part of the E Squad, though it is unclear whether he took part in the search. Mr. Peacher argues that a jury could infer from the timing of the search that it was retaliation for his PREA complaint.

But Officer Long testified that the purpose of the search was to investigate whether Mr. Peacher had put a hit on Officer Plant. Dkt. 141-3. And Mr. Peacher himself testified that the purpose of the search was to find how Mr. Peacher had gotten Officer Plant's personal information. Dkt. 141-2 at 17:18−18:3 (Peacher Deposition) ("Defendant Dennis Davis said [he was conducting the search] because I allegedly was supposed to have Mr. Plant's information. . . . They were looking for it."). Filing a PREA complaint is a protected activity; knowing an officer's personal information and calling him "PP3" is not.

A reasonable jury could not find, based solely on temporal proximity, that the search of Mr. Peacher's cell was based on his PREA complaint—especially given the evidence that the officers were motivated by Mr. Peacher's non-protected activity.[2] *Manuel*, 966 F.3d at 680. Investigator Long, Investigator Peterson, Officer Davis, and Officer Richey are therefore all entitled to summary judgment.

---

[2] This is a pervasive problem with Mr. Peacher's claims: he insists that the defendants could only have been motivated by his PREA complaint, despite clear evidence to the contrary. Indeed, Mr. Peacher himself testified that his alleged investigation of Officer Plant's personal information triggered Officer Plant's anger. *See* Peacher Interview at 9:05:25−9:05:34 (reporting that Officer Plant "just explode[d]" after Mr. Peacher revealed that he knew Officer Plant's full name). And that was before Mr. Peacher filed the PREA complaint.

### D.     Officer Plant

After turning over the "hit" note to internal investigations, Officer Plant disappears from the story. So Mr. Peacher's claim hinges on his assertion that Officer Plant conspired with another inmate to falsify the note. Mr. Peacher points to no evidence in support of this assertion.

There is evidence—if only Mr. Peacher's own denials—that the note was false. But that is not enough. Mr. Peacher must point to evidence that Officer Plant helped create the false note, or at least that he knew it was false when he turned it over to internal investigations. Mr. Peacher suggests that Officer Plant's failure to turn the note over sooner is evidence of deception. Dkt. 194 at 5. But why would Officer Plant go through the trouble of commissioning a false "hit" note, fail to turn it over for several days, and then admit he violated policy by turning it over too late? Viewing the facts in the light most favorable to Mr. Peacher, the delay is neutral at best. It is not evidence that would allow a reasonable jury to find that Officer Plant conspired to create a false note to retaliate against Mr. Peacher for filing a PREA complaint. And because Mr. Peacher points to no other evidence that would allow such a finding, Officer Plant is entitled to summary judgment.

### E.     Officer Cooke

In her role as chairperson of the Disciplinary Hearing Board, Officer Cooke found Mr. Peacher guilty of several conduct violations. Mr. Peacher asserts in his summary judgment response that Officer Cooke told him she would always find him guilty. Dkt. 194 at 7. But he points to no admissible evidence of this. *See* dkt. 194 at 7 (citing Peacher Declaration); dkt. 195 at 132−35 (Peacher Declaration) (not testifying about any such statement). Mr. Peacher says she coordinated and conspired to retaliate against him. Dkt. 194 at 7. He points to no admissible

9

evidence of this either. That leaves nothing that would allow a jury to find that Officer Cooke retaliated against him, so she is entitled to summary judgment.

### F.     Mr. Christian

Like Officer Cooke, Mr. Christian found Mr. Peacher guilty of conduct violations. And as with Officer Cooke, Mr. Peacher points to no admissible evidence that these findings were retaliatory. But Mr. Peacher does testify that Mr. Christian showed bias at the hearing, discrediting Mr. Peacher's witness's testimony because both Mr. Peacher and the witness are Black. Dkt. 141-2 at 60:6−12 (Mr. Peacher testifying that Mr. Christian mumbled, "You guys are the same color so maybe — I don't know about this").

Mr. Peacher alleged in his complaint that Mr. Christian "insinuated the color of the Plaintiff's staff witness' skin, which was black, made it more likely that he was not telling the truth and was lying on behalf of Plaintiff." Dkt. 2 at 19. He did not allege that Mr. Christian discriminated against him for his own race. Indeed, the complaint does not mention Mr. Peacher's race. *See generally* dkt. 2. At screening, the Court did not find that Mr. Peacher had presented an Equal Protection claim. *See* dkt. 10 at 4 ("None of the allegations in the complaint support a viable claim under the Fifth, Eighth, or Fourteenth Amendments. Any claims asserted under the Fifth, Eighth, and Fourteenth Amendments are dismissed for failure to state a claim upon which relief can be granted."). Mr. Peacher moved to reconsider the dismissal of some claims, but he did not ask the Court to reconsider the dismissal of an Equal Protection claim against Mr. Christian. *See generally* dkt. 13 (motion to reconsider). Mr. Peacher later moved to amend his complaint, but he did not seek to amend his allegations against Mr. Christian. Dkt. 127-1 at 16−17 (proposed amended complaint). The deadline for Mr. Peacher to amend his complaint passed more than a

year ago, dkt. 40 at 3 (pretrial schedule), and Mr. Peacher has neither moved to amend his claims against Mr. Christian nor shown good cause for failing to do so earlier.

In short, there is no Equal Protection claim against Mr. Christian proceeding in this action. The Court properly dismissed any such claim at screening, and Mr. Peacher has not resurrected it. As for the retaliation claim against Mr. Christian, Mr. Peacher has pointed to no evidence that would allow a jury to find in his favor. For all these reasons, Mr. Christian is entitled to summary judgment.

## IV.     Conclusion and Further Proceedings

The motion for summary judgment is **granted** as to defendants Paul Plant III, Aaron Long, William Peterson, Dennis Davis, Brandon Richey, Derek Christian, and Christine Cooke. The **clerk is directed** to terminate these defendants from the docket. No partial final judgment will issue at this time.

The defendants' motion for summary judgment is **denied** as to defendants Brandon Prater and Sarah Napper. Mr. Peacher's claims against these defendants will proceed to settlement or trial. The Court prefers that Mr. Peacher be represented by counsel at settlement and trial. The Court has prepared a form motion for indigent litigants seeking the appointment of counsel. The form requests the information necessary for the Court to determine the merits of the motion, and it requires the litigant to acknowledge important conditions of the appointment of counsel. Mr. Peacher shall have **28 days from the date this Order is issued** to either return a completed motion for counsel form to the Court or object to the recruitment of counsel on his behalf. The **clerk is directed** to include a blank motion for counsel with Mr. Peacher's copy of this Order.

**IT IS SO ORDERED.**

Date:   8/31/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

R. PEACHER
881627
PENDLETON – CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov